UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIANE B.,

          Plaintiff,

     v.                                            **DECISION AND ORDER**
                                                               19-CV-628S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

1.      Plaintiff Diane B.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income ("SSI") under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.      Plaintiff received SSI benefits as a child. She attained the age of 18 on May 10, 2015, and was notified on December 1, 2015 that she was no longer eligible for benefits under the adult SSI standards. (R.[2] at 60-64.) Plaintiff filed a Request for Reconsideration regarding her disability cessation on December 19, 2015. (R. at 65.) After her request was denied, Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 77.) Plaintiff appeared and testified before Administrative Law Judge William Weir at a hearing held on June 25, 2018, in Buffalo,

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

New York. (R. at 31-55). Vocational Expert Michael Kline also appeared and testified by telephone. At the time of the hearing, Plaintiff was 21 years old, with a ninth-grade education and no prior work experience. (R. at 37, 58.)

3.      On July 27, 2018, the ALJ issued a written decision concluding that Plaintiff's disability ended on December 1, 2015, and that Plaintiff has not become disabled again since that date. (R. at 15-25.) On March 19, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 15.) Plaintiff filed a response on February 26, 2020 (Docket No. 16), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where

---

[3] The ALJ's July 27, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Social Security Act provides that individuals eligible for SSI as children (under age 18) must have their disability redetermined under the disability rules for adults when they attain age 18. 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987. The same rules that apply to new adult disability applications apply to an age 18 redetermination, except for the provisions pertaining to substantial gainful activity. 20 C.F.R. § 416.987(b).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual age 18 or older is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the

validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

      9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

      10.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff was eligible for SSI benefits as a child for the month preceding the month in which she attained age 18, but was notified that she was no longer disabled, pursuant to adult standards, as of December 1, 2015. (R. at 17.) At step two, the ALJ found that Plaintiff has the severe impairments of scoliosis, obesity, an anxiety disorder, and a depressive disorder. (Id.)

12. The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Id.)

13. Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except that she can:

> lift up to 15 pounds, but she must have the ability to sit/stand at will every half hour while maintaining task. She can perform simple, repetitive one or two-step tasks, but no complex work that involves multiple or simultaneous goals or objectives or the need to independently set quantities, quality, or method standards. She may have occasional supervisor, co-worker, or public contact.

(R. at 19-20.)

14. At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 24.) At step five, the ALJ found that there is a significant number of jobs in the national economy that Plaintiff can perform. (R. at 24.) Accordingly, the ALJ found that Plaintiff

5

has not become disabled again since her disability ended on December 1, 2015. (R. at 25.)

15.   Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because: (1) the ALJ improperly formulated a RFC based on her own lay opinion; (2) the ALJ failed to explain the weight he gave to the opinions of reviewing physicians Dr. Siddiqui and Dr. Marasigan; (3) the ALJ improperly formulated and RFC without a medical opinion on Plaintiff's mental health functioning; and (4) the ALJ improperly relied on the stale opinion of consultative examiner Dr. Hongbiao Liu. Defendant argues that the ALJ properly performed her statutory role of assessing RFC based on the record as a whole.

16.   Plaintiff had scoliosis since childhood, and underwent four surgeries for this condition, during which she had metal rods inserted in her back. (R. at 256.) Doctors recommended removal of the hardware, but Plaintiff refused, and stated that she had no interest in seeing a spine specialist. (R. at 453, 456.) Plaintiff was prescribed Tramadol for chronic back pain, but did not take it regularly. (See, e.g., 254, 316, 366, 387, 462.) At Plaintiff treated with PA Kelsey Talley regularly: she received a prescription for Tramadol for back pain on February 2, 2016 (R. at 254), but appeared "in no acute distress" on July 1, 2016, and was not treated for back pain at other visits. (See, e.g., R. at 256, 303, 307, 310, 314.). Plaintiff also treated with PA Cortni Monroe. On November 7, 2016, Monroe noted that Plaintiff did not take anything for back pain and was hesitant to use even ibuprofen or Aleve. (R. at 462.) After a neurological consultation at Dent, on September 8, 2017, she was diagnosed with chronic back pain. (R. at 525, 531.) Because she could not afford medical marijuana, she was started on methadone for pain control. (R. at 531.)

17. The record also shows that Plaintiff received treatment for anxiety and depression. Plaintiff attended counseling sessions with Maryann Herzing. On March 15, 2016, she was prescribed Lexapro for depression, but reported that she never took it. (R. at 313, 310.) On April 4, 2016, she complained to PA Kelsey Talley of anxiety, but stated that she had not started her prescribed anti-anxiety medication. (R. at 210.) On June 17, 2016, PA Talley prescribed Wellbutrin for the aftermath of a breakup, but Plaintiff never started this medication. (R. at 305.) On July 1, 2016, Plaintiff reported that she was happy with a new boyfriend and did not feel that she needed an anti-depressant. (R. at 303.) PA Talley noted that Plaintiff's mood was well controlled without medication (R. at 304.) Treatment notes from multiple providers show that she regularly was oriented, had an intact thought process, good insight and judgment, and logical thought processes. (See, e.g., 336, 357, 377, 418, 444, 456.)

18. The record contains opinion evidence from one of Plaintiff's treating providers, Cortni Monroe, PA. On July 31, 2017, PA Monroe filled out a form provided by Plaintiff, indicating that Plaintiff suffered from "extreme" pain, that she could not stand or sit for more than 15 minutes at a time, and that Plaintiff was likely to miss 4 or more days of work per month based on her impairments. (R. at 270-71.)[4] PA Morgan saw Plaintiff several times in 2016-18 for back pain; other appointments addressed pharyngitis ("no other complaints today"), sinusitis, scabies (no musculoskeletal symptoms), cellulitis, rhinitis, and an annual examination. (See R. at 470-73, 474-78, 479-83, 489-93, 495-99, 505-09.)

---

[4] The answers on this form closely track the answers that Plaintiff herself wrote on an identical form dated July 9, 2017. (R. at 272-73.)

19. The record also contains a consultative examination by Dr. Hongbiao Liu. At an internal medicine evaluation on July 1, 2015, Dr. Hongbiao Liu noted that Plaintiff cooked, cleaned, took care of her hygiene, watched television and listened to the radio, and socialized with friends. (R. at 243.) Plaintiff had decreased range of lumbar motion and ability to squat, but a full range of cervical spine and extremity motion, negative straight leg raising bilaterally, full motor strength in the extremities, and no sensory deficit or atrophy. (R. at 244.) Dr. Liu noted that Plaintiff had not seen a spine specialist since 2013 despite her history of scoliosis. She demonstrated a normal gait, full flexion and extension in her cervical spine, and flexion and extension of 55 degrees in her lower lumbar spine. (Id.) She needed no help changing or getting onto the exam table. (Id.) Dr. Liu noted Plaintiff's history of asthma and hypothyroidism. (R. at 242.) He opined that she would have a mild limitation for prolonged walking, bending, and kneeling, and that she should avoid heights and irritants. (R. at 245.) In a mental status screen, he observed that Plaintiff appeared oriented in all spheres, with a normal affect and no impaired judgment or memory deficits. (R. at 244.)

20. The record also contains advisory opinions from state agency reviewers Dr. S. Siddiqui and Dr. L. Marasigan. On November 18, 2015, Dr. Siddiqui opined, based largely on Dr. Liu's examination, that Plaintiff could frequently lift 10 pounds, could stand and sit for about 6 hours out of an 8-hour workday, and had not postural restrictions. (R. at 249-252.) On April 14, 2016, Dr. Marasigan opined, after reviewing the medical record up to that date, that Plaintiff was capable of frequently lifting 10 pounds, could stand and sit for about 6 hours out of an 8 hour workday, and could occasionally climb, balance, stop, kneel. (R. at 262-66.)

21. At her hearing, Plaintiff testified that she experienced back pain and had difficulty lifting and walking. Nevertheless, she stated that she would be able to work eight hours a day washing counters or working on a register if she were able to take breaks to sit, have her pain medicine nearby, and would not have to lift more than 15 pounds. (R. at 48.)

22. Plaintiff first argues that the ALJ impermissibly formulated Plaintiff's RFC based on his own lay opinion, not on any medical opinion. But this argument misapprehends the relevant regulations, which clearly state that an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on issues such as ... [the claimant's] residual functional capacity ..., the final responsibility for deciding these issues is reserved to the Commissioner.").

23. When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources. Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). "It is well-settled that 'the medical opinion of a [plaintiff's] treating [source] is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence.'" Hatcher v. Astrue, 802 F.Supp.2d 472, 476 (W.D.N.Y.2011) (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000)) (alteration added).

24. An ALJ should also consider "information from 'other sources,' … which 'may also help ... to understand how [the claimant's] impairment affects [her] ability to

9

work.'" Allen v. Comm'r of Soc. Sec., 351 F. Supp. 3d 327, 335–36 (W.D.N.Y. 2018). The amount of weight to give the opinions of "other sources" is based in part on "the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." Williams v. Colvin, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016).

25. Ultimately, the ALJ is tasked with assigning an RFC that reflects the record as a whole. Johnson v. Colvin, 669 F. App'x 44, 46–47 (2d Cir. 2016). Remand is not warranted when the record contains sufficient evidence supporting the ALJ's determination and where the ALJ weighs all of that evidence when making his residual functional capacity finding. Tankisi v. Comm'r of Soc. Sec., 521 Fed. App'x. 29, 34 (2d Cir. 2013); Matta v. Astrue, 508 Fed. App'x. 53, 56 (2d Cir. 2013).

26. This Court finds that the ALJ properly assessed the record as a whole in formulating Plaintiff's RFC. In support of her RFC, the ALJ cited other parts of the record, including Plaintiff's activities of daily living and, in particular, Plaintiff's own testimony that she would be able to wash counters or work on a register if she had pain medicine and could take breaks and sit. (R. at 47-48.) The ALJ assessed the record as a whole, and formulated an RFC consistent with the record.

27. Plaintiff's argument that the ALJ erred in not giving significant weight to PA Morgan's opinion is similarly unavailing. Morgan's opinion is inconsistent with her own treatment of Plaintiff, with Plaintiff's testimony, and with the record as a whole. Morgan's opinion does not provide any findings to explain her highly restrictive opinion, nor is it

consistent with Plaintiff's minimal use of pain medicine. See Matta v. Astrue, 508 F. App'x 53, 57 (2d Cir. 2013).

28.    Plaintiff's argument that the ALJ erred in relying on the "stale" opinion of Dr. Liu, formulated in 2015, is also unavailing. "A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." Clute ex rel. McGuire v. Commissioner of Social Security, 2018 WL 6715361, *5 (W.D.N.Y. 2018). But "[t]he mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Comm'r of Soc. Sec., 2018 WL 3628253, *6 (W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"); see also Pritchett v. Berryhill, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes 'significant deterioration' after a consultative examination, the examination may not constitute substantial evidence" (emphasis added)); Andrews v. Berryhill, 2018 WL 2088064, *3 (W.D.N.Y. 2018) (same).

29.    Significant deterioration or change in a claimant's impairments is thus a necessary factor in finding staleness. Compare Schneider v. Comm'r of Soc. Sec., No. 19-CV-290S, 2020 WL 3096979, at *3 (W.D.N.Y. June 11, 2020) (no deterioration where evidence after consultative examination showed "no appreciable change" and a "stable disease course") with Morales v. Commissioner of Social Security, 17-CV-341-FPG, 2019 WL 1109572, *6 (W.D.N.Y. 2019) (an opinion "which contained no lifting restrictions … was indisputably rendered stale by Plaintiff's two subsequent hernia repair surgeries"); Biro v. Commissioner of Social Security, 335 F. Supp. 3d 464, 471 (W.D.N.Y. 2018)

(finding stale an opinion rendered nearly 5 years before knee injury and two subsequent surgeries); Caswell v. Berryhill, 17-CV-6133-FPG, 2018 WL 4404578, *4 (W.D.N.Y. 2018) (medical opinion stale where plaintiff experienced multiple exacerbating events after the exam, including two other car accidents, surgeries, trauma stemming from arrest, and a fall).

30.     Here, Dr. Liu opined that Plaintiff had mild limitations in prolonged walking, bending and kneeling. The record after Dr. Liu's examination does not contain evidence of significant deterioration. At an examination on November 11, 2016, PA Morgan observed pain with palpation of thoracic and lumbar spine, but no pain with palpation of cervical spine, and a negative straight leg raise. (R. at 466.) An examination by PA Morgan on July 31, 2017, revealed limited range of motion, positive straight leg raise on the right leg, and pain on palpation. (R. at 487). On February 27, 2018, Dr. Ashraf Henry at Dent found that Plaintiff had a reduced range of motion with flexion and extension, positive straight leg raise, tenderness to palpation, but also noted normal gait and station and normal muscle tone. (R. at 527.) As discussed above, Plaintiff herself did not regularly take pain medication to treat her back pain. While Plaintiff clearly experienced some back pain during the period after Dr. Liu's examination, there is no evidence of "deterioration" that made Dr. Liu's opinion stale.

31.     Plaintiff also argues that the ALJ erred because he did not request an opinion from Plaintiff's mental health treatment provider or a consultative examination of her mental functioning. Even assuming, arguendo, that the ALJ had a duty to request a mental health opinion, "remand is not always required when an ALJ fails in his duty to request opinions, particularly where … the record contains sufficient evidence from which

an ALJ can assess the petitioner's residual functional capacity." Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013).

32. Here, the record shows that Plaintiff experienced anxiety and depression, but also that her status varied based on situational factors. Plaintiff testified that she was working on her GED (R. at 22, 37, 446, 449), and does not appear to have taken anti-depressant medication. (R. at 302, 306, 310, 314, 431, 496.) This is not inconsistent with the ALJ's RFC of simple tasks, no independent setting of goals, and occasional supervisor, co-worker, or public contact. Because the evidence here is consistent and sufficient to make a determination, the ALJ's failure to request a mental health opinion is, at worst, harmless error.

33. Finally, Plaintiff argues that the ALJ erred by failing to explain the weight he gave to the opinions of reviewing physicians Siddiqui and Marasigan. An ALJ must give reasons for the weight he or she gives to the opinions of treating physicians and of other medical sources. 20 C.F.R. § 416.927(f)(2). The amount of weight given to the opinions of "other sources" should be based on "the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." Williams v. Colvin, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016). Even if this analysis is not explicitly provided, if "a searching review of the record" assures a Court "that the substance of the treating physician rule was not traversed," a court will affirm. Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019).

34. Here, the lifting and sit/stand restrictions assessed by Drs. Siddiqui and Marasigan are consistent with the record. On November 18, 2015, Dr. Siddiqui opined

that Plaintiff could lift 10 pounds frequently, and sit or stand for 6 hours at a time with breaks. (R. at 248.) On April 14, 2016, Dr. Marasigan opined that Plaintiff could lift 10 pounds frequently, and could sit or stand for 6 hours at a time with breaks, noting her activities of daily living and the observations of Dr. Liu. (R. at 261-64.) Plaintiff does not identify any way in which these are at odds with the record, except with PA Monroe's opinion, which, as discussed above, is inconsistent with Monroe's own observations and Plaintiff's own testimony. Any error in the ALJ not explaining the weight given to Dr. Siddiqui's and Dr. Marasigan's opinions is harmless, because their opinions are consistent with the record as a whole.

35.   Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:  May 18, 2021
        Buffalo, New York

                                        <u>s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                        United States District Judge